FILED

Fred D. Dorton, Jr. (State Bar No. 237121)
THE DORTON FIRM
A Professional Law Corporation
9701 Wilshire Boulevard, Tenth Floor
Beverly Hills, California 90212
Telephone: (310) 598-6486
Facsimile (310) 598-6487
Email: fdorton@thedortonfirm.com

2009 SEP 18 AM 11:55

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

Attorney for Plaintiff
MAGDALENA DEL ROSARIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ED CV 09 - 01772 SGL

MAGDALENA DEL ROSARIO, an Individual,

    Plaintiff,

vs.

THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-IMR, its assignees and/or successors in interest; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc., a "Suspended" corporate entity; THE MORTGAGE STORE FINANCIAL, Inc., a California Corporation, a corporate entity; COUNTRYWIDE HOME LOANS, Inc., a corporate entity; RECONTRUST COMPANY, a corporate entity; and DOES 1-10, Inclusive.

    Defendants.

CASE NO.

PLAx

COMPLAINT FOR:

(1) TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
(2) DECLARATORY RELIEF
(3) VIOLATION OF UNFAIR PRACTICES 15 USCS § 1692f
(4) VIOLATION OF VALIDATION OF DEBTS 15 USCS § 1692g
(5) VIOLATION OF FALSE AND MISLEADING REPRESENTATIONS 15 USCS § 1692e
(6) VIOLATION OF RESPA 12 U.S.C. § 2605
(7) VIOLATION OF RESPA 12 U.S.C. § 2607
(8) VIOLATION OF TRUTH IN LENDING ACT (15 U.S.C. § 1601)
(9) VIOLATION OF THE BANK TYING ACT 12 USCS § 1972
(10) BREACH OF IMPLIED COVENANT OF GOOD FAITH UCC § 1-304
(11) UNDUE INFLUENCE

---

MAGDALENA DEL ROSARIO v. THE BANK OF NEW YORK, ET. AL.    COMPLAINT FOR DAMAGES

COPY

|  |  |
|---|---|
| ) | (12) QUIET TITLE |
| ) | (13) VOID AND/OR SET ASIDE DEED OF TRUST |
| ) | (14) SET ASIDE TRUSTEE SALE |
| ) | (15) ACCOUNTING |
| ) | (16) FRAUD |
| ) | (17) VIOLATION OF CALIFORNIA ROSENTHAL ACT |
| ) | (18) CONSTRUCTIVE TRUST |
| ) | [REQUEST FOR JURY TRIAL] |

Plaintiff MAGDALENA DEL ROSARIO (hereinafter "Plaintiff' or "Ms. Del Rosario"), by and through her undersigned counsel, for her Complaint against Defendants THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-IMR, its assignees and/or successors in interest; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc., a "Suspended" corporate entity; THE MORTGAGE STORE FINANCIAL, Inc., a California Corporation, a corporate entity; COUNTRYWIDE HOME LOANS, Inc., a corporate entity; RECONTRUST COMPANY, a corporate entity; and DOES 1-10, Inclusive (hereinafter "Defendants"), pleads as follows:

**Plaintiff will receive a "lock-out" notice and will be physically removed by the San Bernardino County Sheriff. There are no current orders preventing Plaintiff from being removed from her home.**

## JURISDICTION AND VENUE

1. Plaintiff's claims against Defendants includes violations of federal statutes commonly known as CONSUMER CREDIT PROTECTION DEBT COLLECTION PRACTICES ACT, RESPA, and TILA, with additional claims under California state law. These claims all arise out of the same controversy and sequence of events.

2. The real property which is the subject of this complaint is located within the State of California, County of San Bernardino.

3.   This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367, 18 U.S.C. §1964(c), and 15 U.S.C. §1640(e).

4.   Venue is proper in the Central District of California under 28 U.S.C. § 1391(b).

## THE PARTIES

5.   Plaintiff MAGDALENA DEL ROSARIO is, and at all times mentioned herein were, individuals residing in the State of California, County of San Bernardino, State of California. Plaintiff resides at the real property that is the subject of this Complaint, the location of which is commonly known as 6653 Fillmore Street, in the County of San Bernardino, State of California, 91710 (hereinafter the "Property"). Plaintiff executed a Note (hereinafter "NOTE") secured by a Deed of Trust (hereinafter "DEED OF TRUST" or "MORTGAGE") for a loan on the Property.

6.   Plaintiff is informed and believes and thereon alleges that at all times mentioned in this Complaint, Defendant THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-IMR, its assignees and/or successors in interest ("hereinafter referred to as "PURCHASER") was a corporate entity and at all times relevant was conducting business in the County of San Bernardino, State of California. PURCHASER is engaged in the business of purchasing properties at foreclosure sale.

7.   Plaintiff is informed and believes and thereon alleges in this Complaint, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, (hereinafter referred to as "MERS") is currently a "Suspended" corporation in the State of California, and at all relevant times herein mentioned was conducting business in the County of San Bernardino, State of California without apparent authority, and holds itself out to be the Nominee and Beneficiary under the NOTE. Plaintiff is informed and believes and thereon alleges MERS is operating in the State of California without the proper legal authority to do so.

8. Plaintiff is informed and believes and thereon alleges in this Complaint, Defendant THE MORTGAGE STORE FINANCIAL, Inc., a California Corporation ***referred to as LENDER in the original note,*** ( hereinafter referred to as "NOTE LENDER") is a corporate entity and at all times relevant was conducting business in the County of San Bernardino, State of California. NOTE LENDER is engaged in the business of providing mortgage loans to consumers.

9. Plaintiff is informed and believes and thereon alleges in this Complaint, Defendant Countrywide Home Loans, Inc. (hereinafter referred to as "ALLEGED SERVICER") is engaged in the business of collecting mortgage payments from homeowners on behalf of mortgage lenders. ALLEGED SERVICER is not the beneficiary under the NOTE and is not the holder of the NOTE and MORTGAGE and does not have apparent legal authority to initiate foreclosure proceedings.

10. Plaintiff is informed and believes and thereon alleges in this Complaint, Defendant Recontrust Company (hereinafter referred to as "ALLEGED SUCCESSOR TRUSTEE") at all times relevant was conducting business in the County of San Bernardino, State of California. ALLEGED SUCCESSOR TRUSTEE is listed as Trustee on the Notice of Trustee's Sale. Plaintiff does not recall receiving any valid notice that the ORIGINAL TRUSTEE was being substituted by the ALLEGED SUCCESSOR TRUSTEE.

11. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend her complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named defendants is responsible in some manner for the acts complained of herein.

12. Plaintiff is informed and believes and thereon alleges that Defendants and each of them at all times herein relevant were, and still are, agents for one another, and acting within the purpose and scope of such agency, employment and partnership, and

with the knowledge, consent, approval, and ratification of the remaining Defendants.

13. Plaintiff brings this action against Defendants for general damages, prejudgment interest, costs, punitive damages, for declaratory and injunctive relief for the Defendants' acts and actions that have unduly prejudiced, damaged or harmed Plaintiff.

## FACTUAL BACKGROUND

14. This case arises out of a wrongful foreclosure by Defendants. Defendants foreclosed on the Property without having the requisite legal authority to do so. Defendants did not own the NOTE, are not in possession of the actual NOTE, and/or are unable to produce the actual NOTE. Defendants also wrongfully foreclosed on the Property because they are continuing the foreclosure on the property even after Plaintiff disputes the debt. Moreover, Plaintiff disputed the debt and the entire Note because she had reason to believe that she was charged with unauthorized fees, the Defendants have not acknowledged her request for verification and validation/itemization of her alleged default.

15. On or about August 16, 2005, Plaintiff purchased her home and obtained a loan evidenced by a DEED OF TRUST and NOTE through Defendant LENDER. Plaintiff is not aware whether the actual funding of the loan is from LENDER and Plaintiff has been unable to obtain the information from LENDER.

16. Plaintiff never received any correspondence setting forth who funded the loan, whether the loan was sold, assigned and/or securitized or who actually physically holds the NOTE and MORTGAGE.

17. Plaintiff has lived in her home for several years. Plaintiff fell behind payments due to economic hardship; however, Plaintiff was making good faith efforts to catch up on arrears by contacting the ALLEGED SERVICER in an effort to obtain a work-out agreement to no avail.

18. In February 2008, Plaintiff contacted Defendant ALLEGED SERVICER to request a loan modification.

19. By March 2008, Plaintiff had submitted all documents for Defendant ALLEGED SERVICER's loan modification program "Project Lifeline", including a hardship letter which specifically outlined Plaintiff's reasons for falling behind on her monthly mortgage payments.

20. On March 21, 2008, Plaintiff contacted Defendant ALLEGED SERVICER via telephone to request a status update on her loan modification application. Plaintiff was told to call back in 2-3 weeks because Defendant ALLEGED SERVICER was in the process of reviewing her file and assigning a negotiator. Defendant ALLEGED SERVICER also told Plaintiff that no payments would be accepted during that time because a loan modification application had been initiated. Plaintiff ceased making payments at that time.

21. On April 18, 2008, Plaintiff contacted Defendant ALLEGED SERVICER via telephone to request a status update on her loan modification application. Plaintiff was informed that her file was assigned to a negotiator named Victoria Virula who was still reviewing Plaintiff's request for a loan modification.

22. Between April 18, 2008 and July 1, 2008, Plaintiff continued to call Defendant ALLEGED SERVICER to request an update on the status of her loan modification application; however, Defendant ALLEGED SERVICER was unresponsive to Plaintiff's requests. Defendant ALLEGED SERVICER continued to collect on the disputed debt and sent letters that were not in compliance with Federal Law.

23. In mid-July 2008, Defendant ALLEGED SERVICER finally contacted Plaintiff to notify her that the loan modification application was denied. The following week, Plaintiff contacted Defendant ALLEGED SERVICER to get more details about why the loan modification application was denied. Defendant ALLEGED SERVICER would only tell Plaintiff that her debt-to-income ratio was too high.

24. In August 2008, Plaintiff contacted Inland Fair Housing and Mediation Board in Upland, California to seek help, and save her home. The Inland Fair Housing

and Mediation Board consulted with the Plaintiff, collected copies of her pertinent financial documents and re-sent this new file to Defendant ALLEGED SERVICER who denied Plaintiff's second attempt to modify her loan.

25. Defendants alleged that Plaintiff was in default on or about August 18, 2008. However in the initial communication with Plaintiff and in connection with the debt on the Property, the Defendants failed to follow Title 15 USCS 1692 (g) and send Plaintiff a written notice containing the name of the creditor and the proper way to verify the debt. Even without receiving the required statement from Defendants on how to validate the debt, Plaintiff adamantly disagreed with and disputed the amount allegedly owed and requested verification of the debt.

26. Plaintiff requested Defendants act in good faith and send Plaintiff an explanation of and validation of the debt. Despite numerous requests, Plaintiff was unable to speak to anyone regarding her loan and Plaintiff was confused regarding her default and did not know the proper legal protocol to defend her belief. Defendants were unreasonably defiant and refused to send an explanation of the debt, failed to disclose the true holder of the NOTE, and unlawfully sold the Property at a non-judicial foreclosure sale.

27. Plaintiff further alleges that she entered into default because Defendants were not willing to make any good faith efforts to discuss the terms of her loan, nor discuss the amount that was allegedly past due.

28. Plaintiff is likely to prevail on the merits because Plaintiff is informed and believes and therefore alleges the trustee sale was improper because the loan was not in breach of any agreement with Defendants pursuant to Cal. Civ. Code Sec 2924 that would give rise to a non-judicial foreclosure sale, Defendants never proved there was in fact a default, and Defendants did not have physical possession of the NOTE and MORTGAGE, did not pay actual consideration for the NOTE, and did not have a properly endorsed NOTE at the time of initiating the non-judicial foreclosure, and at the time of the actual non-judicial foreclosure sale.

MAGDALENA DEL ROSARIO v. THE BANK OF NEW YORK, ET. AL.    COMPLAINT FOR DAMAGES

7

29. Notwithstanding the fact that Defendants were not in actual physical possession of the NOTE and MORTGAGE, had not paid actual consideration for the NOTE and MORTGAGE, and notwithstanding the fact the alleged default amount was unverified, Defendants commenced foreclosure sale of Plaintiff's property on or about August 18, 2008 and in fact sold Plaintiff's home to PURCHASER. PURCHASER then commenced an unlawful detainer action to evict Plaintiff from her home.

## FIRST CAUSE OF ACTION
## REQUEST FOR INJUNCTIVE RELIEF
(Against All Defendants)

30. Plaintiff incorporates by reference each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

31. Plaintiff seeks immediate Temporary Restraining Order and Preliminary Injunction. Plaintiff further seeks a Permanent Injunction enjoining the wrongful acts of Defendants.

32. Immediate injunctive relief is warranted in this action because Plaintiff and her family are in imminent danger of wrongfully being physically removed from the home by the San Bernardino County Sheriff at any time. Defendant PURCHASER prevailed at an unlawful detainer proceeding as to the Property, and as a result, a writ of possession issued in favor of Defendant PURCHASER. Plaintiff received the "lock-out" notice and would have been physically removed by the San Bernardino Sheriff on Tuesday, July 14, 2009 at 6:01 a.m.; but for the 3 day extension she received. The impending "lock-out" will be re-scheduled any day. Plaintiff contends however, that the foreclosure sale itself should be set aside, for the reasons set forth in the instant complaint.

33. There was no breach of obligation because the default amount was inaccurate and therefore Defendants did not have the right to exercise foreclosure under California Civil Code § 2924.

34. Plaintiff is informed and believes and thereon alleges that ALLEGED ALLEGED SERVICER is not the note holder for the property nor the real party in interest and thus lacks the standing to exercise a right to foreclose on the property. Moreover, Defendants including the Doe Defendants do not and did not have actual physical possession of the NOTE, did not pay actual consideration for the NOTE, and/or do not have a properly endorsed NOTE that would entitle or would have entitled Defendants to both enforce the NOTE and MORTGAGE and legally proceed with non-judicial foreclosure against Plaintiff's property.

35. Defendant ALLEGED SERVICER is not the duly authorized agent because the actual note holder, Beneficiary or Original Trustee under the deed of trust never conferred Defendant ALLEGED SERVICER with the power to act on Lender's behalf.

36. Plaintiff has not received any information that whomsoever is the true note holder, in fact authorized a substitution of trustee or authorized ALLEGED SERVICER to act as Trustee and foreclose on the property.

37. Plaintiff is informed and believes and thereon alleges any documents endorsed by MERS, without MERS having physical possession of the NOTE or having permission from the lender who was in physical possession of the NOTE at the actual time the document or documents were endorsed by MERS is invalid, void and legally unenforceable.

38. Moreover, MERS currently has "Suspended" corporate status in the State of California, and Plaintiff is informed and believes and thereon alleges that at the time any documents were executed by MERS allegedly conferring any right on TRUSTEE, any SUCCESSOR TRUSTEES, LENDERS, and/or SERVICERS to foreclose on Plaintiff's Property are invalid and legally unenforceable. Therefore, any actions taken by Defendants pursuant to any rights allegedly conferred on them by MERS during the time MERS was a suspended corporate entity in the State of California, were and are legally unenforceable, and the foreclosure sale and

subsequent trust deed upon sale are invalid and legally unenforceable. Accordingly, Plaintiff remains the true owner of the Property.

39. Plaintiff does not have any recollection of anyone calling or attempting to contact her via any method, in order to explore her options for avoiding foreclosure. In fact, Plaintiff contends that she made several attempts to explore her options to avoid default, prior to receiving any late notices. The servicing agent was not willing to explore any options.

40. If injunctive relief is not immediately granted, Plaintiff will likely be removed from her home before the Court has the opportunity to adjudicate the issues raised herein, and she would thus be deprived of any adequate remedy for the wrongs committed by Defendants.

41. Moreover, if Plaintiff were forced to move from her home, it would subject her to the irreparable harm of public humiliation and loss of reputation in the community in which she lives and works. If the eviction proceeds, Plaintiff does not know where she would live and could be out on the street. Specifically, Plaintiff and her family would be homeless and such irreparable harm would also subject her to public humiliation and loss of reputation in the community. If Plaintiff is physically removed and locked out, Plaintiff and her family do not have alternative living arrangements and would be forced to live on the street.

42. Plaintiff will suffer irreparable injury for which there is no adequate remedy at law should the requested injunctive relief not be granted. The property is unique and when Plaintiff is forcibly evicted from her home and Defendant PURCHASER sells the Property to a potential third party; Plaintiff will lose this unique property forever.

43. The above-mentioned conduct of defendants, and each of them, was willful and was intended to cause injury to Plaintiff.

44. The issues raised herein were not considered by the Court in the unlawful detainer proceedings.

## SECOND CAUSE OF ACTION
## (DECLARATORY RELIEF)
## (AGAINST ALL DEFENDANTS)

45. Plaintiff incorporates by reference each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

46. Plaintiff is informed and believes and thereon alleges the original NOTE and/or DEED OF TRUST have been bundled and sold in a pool to investors as Mortgage Backed Securities and the true owner of the NOTES and DEED OF TRUST, having physical possession of, paid actual consideration for, and having proper indorsement of the NOTE cannot be ascertained.

47. Plaintiff is informed and believes and thereon alleges any documents endorsed by MERS, without MERS having physical possession of the NOTE or having permission from the lender who was in physical possession of the NOTE at the actual time the document or documents were endorsed by MERS is invalid, void and legally unenforceable.

48. Moreover, MERS currently has "Suspended" corporate status in the State of California, and Plaintiff is informed and believes and thereon alleges that at the time any documents were executed by MERS allegedly conferring any right on ALLEGED TRUSTEE, any SUCCESSOR TRUSTEES, LENDERS, and/or SERVICERS to foreclose on Plaintiff's Property are invalid and legally unenforceable. Therefore, any actions taken by Defendants pursuant to any rights allegedly conferred on them by MERS during the time MERS was a suspended corporate entity in the State of California, were and are legally unenforceable, and the foreclosure sale and subsequent trust deed upon sale are invalid and legally unenforceable. Accordingly, Plaintiff remains the true owner of the Property.

49. In view of the foregoing, Plaintiff alleges none of the Defendants at all relevant times, are or were the holders in due course of the NOTE and MORTGAGE. Therefore, they had no legal right, authority, standing or entitlement to declare a

default or begin a non-judicial foreclosure as prescribed under Cal. Civ. Code § 2924.

50. Plaintiff further alleges because the debt was never verified, there was no default. Moreover, Plaintiff is informed and believes and thereon alleges the underlying calculations of the debt were inaccurate, there were unauthorized fees included in the amount needed to bring Plaintiff's account in good standing, and such over charges were deliberate, which is why the debt was not validated. Thus there was no valid and legal justification for Defendants to initiate the non-judicial foreclosure sale on the Property.

51. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights, obligations and duties in that Plaintiff contends Defendants did not have grounds nor hold the legal right to initiate the non-judicial foreclosure.

52. Accordingly, Plaintiff desires a judicial determination of Defendants rights, obligations and duties, and a declaration as to who the actual owner of the NOTE and MORTGAGE is and whether Defendants had standing and the right to legally foreclose on the property.

53. Plaintiff humbly requests the court upon such finding, issue appropriate orders regarding the recording of the Notice of Default, and subsequent Notice of Trustee's Sale, and actual Non-Judicial Foreclosure Sale, and whether Defendants had any right or interest in the property to record such instruments and complete the non-judicial foreclosure sale.

54. Plaintiff humbly requests the court, in determining who the actual holder in due course of the NOTE is, require the Defendants to produce the Original Note and Chain of Title, and validate that real consideration was paid for the NOTE and MORTGAGE, and not merely produce a copy of the NOTE.

55. A judicial declaration is necessary and appropriate at this time under the circumstances in order for Plaintiff and Defendants to ascertain their rights obligations and duties under the NOTE and the Property.

## THIRD CAUSE OF ACTION

## (VIOLATION OF UNFAIR PRACTICES - 15 USCS § 1692f)

## (AGAINST ALL DEFENDANTS)

56. Plaintiff re-alleges and incorporates by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

57. Defendants threatened to and actually took non judicial action to effect dispossession of Plaintiff's property without authority because Defendants did not have actual physical possession of the NOTE, had not paid actual consideration for the NOTE, and/or did not have proper endorsement of the NOTE and had no present right to possession of the property claimed as collateral through an enforceable security interest.

58. Plaintiff further contends Defendant MERS, having "Suspended" corporate status, did not have legal right to endorse any agreements, assignments, substitutions or other documents, allegedly conferring any rights to any LENDERS, TRUSTEES, SUCCESSOR TRUSTEES or SERVICERS, affecting Plaintiff's Property located in the State of California. Therefore, Defendants acting upon any authority allegedly conferred by MERS had not present right to possession of the Property claimed as collateral through an enforceable security interest.

59. Defendants used unfair and unconscionable means to attempt to collect debt from Plaintiff by collecting an amount, including interest, fees, charges, or expenses incidental to the principal obligation that was not expressly authorized by the agreement, whereby Plaintiff suffered damages.

60. As a result of Defendant's conduct, Plaintiff lost her home based on a disputed amount that was not authorized under the agreement and the nature of such noncompliance adversely affected Plaintiff to such an extent that Plaintiff was propelled into non-judicial foreclosure, and forced to lose her home to a person or entity that did not have right to possession of her home.

## FOURTH CAUSE OF ACTION
## (VIOLATION OF VALIDATION OF DEBTS - 15 USCS § 1692g)
## (AGAINST ALL DEFENDANTS)

61. Plaintiff reallege and incorporate by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

62. Plaintiff is an unsophisticated consumer as defined in 15 USCS § 1692 and the Defendant is a debt collector under the same statutory provision.

63. Defendants, in an initial communication with Plaintiff, attempted to collect a debt yet, Defendants failed to state in the initial communication, the amount of the debt or the name of the creditor to whom the debt was owed.

64. Defendants did not communicate to Plaintiff orally or in writing that unless they, within thirty days after receipt of the notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

65. Defendants did not communicate to Plaintiff orally or in writing that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

66. Defendants did not communicate to Plaintiff a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

67. Furthermore, Defendants did not send a written statement within five days of the initial communication, indicating the above information.

68. Plaintiff alleges Defendants intentionally failed to comply with the validation of debt requirements, thereby causing Plaintiff to suffer damages. Specifically, as a result of Defendant's failure to validate the debt, despite Plaintiff's

request for such compliance, Plaintiff was unable to ascertain if she in fact owed money and if the alleged amount of money owed was accurate. Furthermore, the nature of such noncompliance adversely affected Plaintiff to such an extent that Plaintiff was propelled into a foreclosure proceeding, wherein she subsequently lost her home in an unlawful foreclosure sale.

## FIFTH CAUSE OF ACTION
## (VIOLATION OF FALSE AND MISLEADING REPRESENTATIONS - 15 USCS § 1692e)
## (AGAINST ALL DEFENDANTS)

69.  Plaintiff re-alleges and incorporates by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

70.  Pursuant to MERS website it provides false and misleading language that "Assignments eliminated forever." (http://www.mersinc.org/why_mers/mom.aspx). "Any loan registered on the MERS® System is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded." (http://www.mersinc.org/about/index.aspx). Plaintiff is informed and believes and thereon alleges that in the State of California a loan or NOTE can only be transferred by the delivery of possession, not by contract or assignment. Thus, the right to enforcement of the NOTE is only transferable by delivery and indorsement of the NOTE itself by the transferor.

71.  By MERS own admission, it does not obtain the requisite authority from the "true beneficiary" or LENDER that has paid true consideration for the NOTE, and the "true beneficiary" may or may not be in actual physical possession of the NOTE at the time the foreclosure process is commenced and ultimately at the time the actual foreclosure sale is conducted. If the required authority is not first obtained from the alleged "true beneficiary" the non-judicial foreclosure sale is commenced without merit and is unlawful.

72. Moreover, MERS, its agents and affiliates falsely represent on the face of the Notice of Default, Notice of Sale and Trustee Deed that the documents are being executed by MERS and/or the "true beneficiary" when in fact the documents are being executed by a Servicer or Trustee without any requisite authority from the "true beneficiary". To this extent the executors of the documents are engaging in fraud and intentional misrepresentation.

73. Appallingly, with the intent to defraud, manipulate, mislead, and conceal the true facts, in accordance with MERS advisement, SERVICERS and/or TRUSTEES sign and execute Notices of Default, Notices of Sale and Trustee Deeds in the name of what MERS purports to be the "true beneficiary" when the person who actually signs the document is not an actual employee or agent of the "true beneficiary". Moreover the documents are signed and executed by employees of the TRUSTEES or SERVICERS, apparently without the knowledge or requisite authority of the actual "true beneficiary" to do so. Without first obtaining the authority of the "true beneficiary" Defendants have forged documentation by signing the documents in the name of the alleged "true beneficiary".

74. Additionally, MERS admits it intentionally advises LENDERS, SERVICERS, and TRUSTEES to commit fraudulent acts by creating a ta avoidance scheme potentially depriving counties in the State of California of revenue. MERS states as follows:

> The MERS procedure for tracking the ownership of mortgages has a direct effect on the foreclosure process. On MERS loans, MERS is shown as the record beneficiary and therefore a MERS foreclosure is brought in the name of MERS. However, at the time of sale the true beneficiary is determined by MERS and the Trustee's Deed Upon Sale is recorded in the name of that true beneficiary. There are no assignments, additional taxes or costs when foreclosing under the MERS' foreclosure procedures.
>
> To achieve this result, the following non-judicial foreclosure guidelines are recommended:
>
> On MERS loans, MERS will show as the beneficiary of record. Foreclosures should be commenced in the name of MERS. To effectuate this process, MERS has allowed each servicer to choose a select number of its own employees to act as officers for MERS. Through this process, appropriate documents may be executed at the servicer's site on behalf of MERS by the same servicing

employee that signs foreclosure documents for non-MERS loans.

Until the time of sale, the foreclosure is handled in same manner as non-MERS foreclosures. At the time of sale, if the property reverts, the Trustee's Deed Upon Sale will follow a different procedure. Since MERS acts as nominee for the true beneficiary, it is important that the Trustee's Deed Upon Sale be made in the name of the true beneficiary and not MERS. Your title company or MERS officer can easily determine the true beneficiary. Title companies have indicated that they will insure subsequent title when these procedures are followed.

Normally, where the name of the grantee under the Trustee's Deed Upon Sale is different than the name of the foreclosing entity, the Trustee's Deed Upon Sale states that the "Grantee was not the foreclosing beneficiary." This designation triggers the imposition of transfer taxes on the sale. It is important to note that in a MERS foreclosure sale, even where the property reverts, the name of the grantee will be different than the name of the entity foreclosing.

Nonetheless, the Trustee's Deed Upon Sale should state that "The Grantee was the foreclosing beneficiary." This is because MERS merely holds title as nominee for the true beneficiary; it is the true beneficiary that has actually foreclosed and acquired title. (MERS State by State MERS Recommended Foreclosure Procedures). (http://www.mersinc.org/Foreclosures/index.aspx).

75. Plaintiff alleges Defendants falsely represented the amount owed on the debt and never verified the actual amount owed.

76. Plaintiff also alleges Defendants used deceptive and misleading practices in connection with the disputed debt by threatening to take an action that Defendants could not legally take. Defendant failed to verify the entity that was in actual physical possession of the NOTE and never confirmed being the actual NOTE holder having paid actual consideration for the NOTE.

77. Defendants failed to comply because they falsely represented the amount owed on the debt and threatened to take actions they did not have legal standing to take, and as a result Plaintiff suffered damages. As a result of Defendant's conduct, Plaintiff lost her home.

78. Defendants acts were willful, intentional and with Malicious, entitling Plaintiff to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
## (VIOLATION OF RESPA 12 USC § 2605)
## (AGAINST DEFENDANTS LENDER AND MERS)

79. Plaintiff re-alleges and incorporates by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

80. Plaintiff is informed and believes and thereon alleges Defendants assigned, sold or transferred the servicing of the Plaintiff's federally related mortgage loan to another person or entity more than once and Defendant did not notify Plaintiff in writing of any assignment, sale, or transfer of the servicing of the loan to any other person or entity.

81. As a result of Defendants' failure to comply, Plaintiff has suffered harm because Plaintiff was sending in payments to entities who were no longer servicing the loan and said payments were not being properly applied thus giving the appearance that Plaintiff was late or not making her payments.

## SEVENTH CAUSE OF ACTION
## (VIOLATION OF RESPA 12 USC § 2607)
## (AGAINST DEFENDANTS LENDER AND MERS)

82. Plaintiff re-alleges and incorporates by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

83. Plaintiff is informed and believes and thereon alleges Defendant violated RESPA because Defendant paid fees, or kickbacks, or a thing of value pursuant to an agreement or understanding, oral or otherwise, and such business was incident to or was a part of Defendants' real estate settlement service in connection with a federally related mortgage. Plaintiff believes she paid a real estate broker affiliated with Defendants in connection with the loan on this Property and Plaintiff discovered, after her loan was closed, hidden fees were paid to third parties.

84. Plaintiff alleges that Defendants had an affiliated business arrangement with real estate broker and Plaintiff unknowingly paid certain fees which were above and beyond what was provided in the written estimate of the charge or range of

charges.

85. Plaintiff is informed and believes and thereupon alleges that Defendant's conduct was not a bona fide error and therefore Plaintiff suffered damages.

### EIGHTH CAUSE OF ACTION
### (VIOLATION OF TILA 15 U.S.C. §1601)
### (AGAINST ALL DEFENDANTS)

86. Plaintiff re-alleges and incorporates by reference under this cause of action each and every allegation made in each and every Paragraph above, as if fully set forth hereunder.

87. The loan transaction at issue is a consumer credit transaction subject to the provisions of TILA. Defendants are "creditors" as that term is defined by 15 U.S.C. §1601. The transaction between Plaintiff and these Defendants was a consumer loan transaction wherein the Defendants extended credit to Plaintiff and such credit was secured by an interest purportedly held by Defendants in the Property.

88. As a consumer credit transaction, Defendants were required to provide Plaintiff with a mandatory Truth-in-Lending disclosure statements and notice of the borrower's right to rescind, specifying the date on which the three-day rescission period expires.

89. In the course of the transaction described herein, Defendants violated TILA in numerous ways, including, but not limited to: failing to provide required disclosures prior to consummation of the transaction; failing to make required disclosures clearly and conspicuously in writing; failing to timely deliver to Plaintiff certain notices required by statute; placing terms prohibited by statute into the transaction; and failing to disclose all finance charge details and the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed.

90. Records from the transaction indicate Defendants extended credit to Plaintiff without regard to his ability to pay, and potentially falsified data to get the

loan approved. Plaintiff is informed and believes and thereon alleges that Defendants have a pattern and practice of extending credit to consumers under high rate mortgages without regard to the consumers' repayment ability.

91. Because of these violations, Plaintiff has a continuing right to rescind. Plaintiff hereby gives notice of rescission by and through this Complaint. Because of these violations, Defendants are liable to Plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 D.S.C. § 1640(a).

92. Plaintiff is also entitled to: rescission of the loan transaction; an order requiring Defendants to take all actions necessary to terminate any security interest in the Property created under the transaction and a declaration by the Court that the security interest is void; expungement of any foreclosure instruments, including but not limited to any Notice of Default or Notice of Trustee's Sale, relating to the transaction from any public record; removal of any derogatory information reported to any credit reporting agency or credit reporting bureau relating to the transaction; the return to Plaintiff of any money given by Plaintiff to anyone, including Defendants, in connection with the loan transaction; statutory damages; costs and reasonable attorney's fees; and such other relief as the Court may deem just and proper.

93. As a result of Defendants' misconduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, which she is entitled to recover. Moreover, Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are warranted and demanded.

94. As a result of Defendants' misconduct, the loan was void and unenforceable as of its inception, and therefore Plaintiff is entitled to rescind the loan agreement and promissory note and does hereby demand rescission.

95. As a result of Defendants' misconduct, Plaintiff is entitled to declaratory and injunctive relief preventing Defendants from taking any action to collect on the